UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

           v.                                  Crim. No. 2:12-cr-12-1

William G. Parker

## REPORT AND RECOMMENDATION
(Doc. 268)

William G. Parker, proceeding *pro se*, has moved pursuant to 28 U.S.C. § 2255 to

vacate, set aside, or correct a sentence following his pleas of guilty to one count of

conspiring to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C.

§§ 846 and 841(b)(1)(B), and one count of assault, in violation of 18 U.S.C. § 113(a)(4).

(Doc. 268.)  Parker, who was sentenced to 150 months in prison, now contends that he

received ineffective assistance of counsel prior to his plea of guilty and at sentencing in

violation of the Sixth Amendment to the Constitution.  The government opposes Parker's

Motion.  (Doc. 295.)  For the reasons set forth below, I recommend that Parker's Motion

(Doc. 268) be DENIED.

## BACKGROUND

### I.      The Charges, Psychiatric Evaluation, and § 851 Information

On February 3, 2012, a criminal complaint was filed charging Parker with the

knowing intentional possession with intent to distribute cocaine base, in violation of 21

U.S.C. § 841(a)(1), and with assault, in violation of 18 U.S.C. § 113(a)(4).  (Doc. 1.)  The

government simultaneously filed a motion for Parker's detention. (Doc. 2.) Also on that date, Attorney Brooks McArthur—who was appointed to represent Parker pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A—filed a motion for a hearing to determine Parker's mental competency, and a request for a psychiatric examination. (Doc. 3.) Attorney McArthur stated in the motion that he had reasonable cause to believe that Parker "may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." (*Id.*)

Parker was ordered detained (Doc. 6), and after he was indicted (Doc. 7), he was arraigned on February 16, 2012 (Doc. 9; *see also* Doc. 206). At the arraignment, McArthur withdrew the motion for a competency hearing and the request for a psychiatric examination. (Doc. 206 at 8–9.) McArthur explained that Parker's medical records indicated that Parker potentially suffered from a mental disease or defect, but that as long as Parker was taking his medication, he would be able to understand the proceedings and to assist in the preparation of his defense. (*Id.*)

Attorney McArthur did, however, engage Dr. Albert Drukteinis to perform an independent psychiatric evaluation. Dr. Drukteinis interviewed Parker for almost three and a half hours on April 12, 2012, and produced a four-page report dated April 13, 2012. (*See* Doc. 292-3.) Dr. Drukteinis's report revealed that he had reviewed all relevant documentation, including prior medical and mental health records, and engaged in psychological testing of Parker. As a result of his examination, Dr. Drukteinis determined that Parker suffered from a schizoaffective disorder with mixed bipolar and

schizophrenic features, as well as cannabis and cocaine dependence. (*Id.* at 4.) Dr. Drukteinis concluded that "[a]lthough Mr. Parker does have a serious mental illness, there is insufficient basis to conclude that he lacked adequate capacity to appreciate the criminality of his conduct, or adequate capacity to conform his conduct to the requirements of the law." (*Id.*) Dr. Drukteinis also concluded that "with his mental illness under adequate treatment, and without the effect of substances, he is competent to stand trial and/or enter a plea in his own behalf." (*Id.*) Attorney McArthur did not pursue any additional psychiatric evaluations for Parker.

On April 19, 2012 a three-count indictment (styled as a First Superseding Indictment) was filed charging in Count 1 that from June 2011 through February 2012 defendants William G. Parker, Haywood Mack, Reginald Daggs, Melvin Hill, Joseph Brown, and Patrick Lepore had engaged a conspiracy to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). In Count 2, Parker was charged alone with the knowing and intentional distribution of cocaine base occurring on February 2, 2012, in violation 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). In Count 3, Parker was charged with the commission of an assault upon Daniel Merchand occurring within the special maritime and territorial jurisdiction of the United States, namely a United States post office, in violation of 18 U.S.C. § 113(a)(4). (Doc. 14.) Assistant United States Attorney (AUSA) Christina Nolan represented the government at all subsequent stages of the case.

On September 4, 2012 the government filed an information pursuant to 21 U.S.C. § 851 alleging that Parker had previously been convicted of a felony drug offense in the State of North Carolina. (Doc. 93.) Specifically, the government alleged that on January 2, 2008 Parker was convicted in Onslow County, North Carolina of possession with intent to sell or deliver cocaine and was sentenced to "a term of imprisonment." (*Id.*) Under 21 U.S.C. § 841(b)(1)(B), offenders who are convicted of engaging in a conspiracy to distribute 28 grams or more of cocaine base and who have sustained a prior "felony drug offense" conviction face a mandatory minimum term of imprisonment of 10 years. A "felony drug offense" for the purposes of the Controlled Substances Act is "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44).[1]

## II.    Plea Agreement

On September 17, 2012 a plea agreement was filed wherein Parker, with the benefit of counsel, agreed to plead guilty to Count 1 (the drug conspiracy charge) and Count 3 (the assault charge). (Doc. 100.) In the plea agreement Parker acknowledged that, by his plea to the conspiracy count and his prior drug felony conviction, he faced a

---

[1] The Controlled Substances Act also defines the unadorned term "felony" as "any Federal or State offense classified by applicable Federal or State law as a felony." *Id.* § 802(13). However, the term "felony drug offense" does not incorporate § 802(13)'s definition of "felony"; section 802(44) provides the exclusive definition of "felony drug offense." *Burgess v. United States*, 553 U.S. 124, 129 (2008).

mandatory minimum term of imprisonment of ten years. (*Id.* at ¶ 2.)[2] Parker stipulated as part of his plea agreement that the conspiracy alleged in Count 1 involved the distribution of 196 grams of cocaine base, and that that quantity of cocaine base was reasonably foreseeable to him. (*Id.* at ¶ 4.) Parker acknowledged that the sentence to be imposed upon him rested within the discretion of the Court and that any prediction or estimate of a calculation under the United States Sentencing Commission Guidelines was not binding upon the Court. (*Id.* at ¶¶ 7–8.)

For its part, the United States agreed (1) to move to dismiss the remaining count of the indictment at time of sentencing, (2) to recommend that Parker had manifested an acceptance of responsibility within the meaning of USSG § 3E1.1(a), and (3) not to prosecute Parker for any other offenses known to the United States at the time of his plea. (*Id.* at ¶ 11.)

On October 9, 2012 Parker appeared with counsel before United States District Court Judge William K. Sessions III to enter his pleas of guilty pursuant to Rule 11 of the Federal Rules of Criminal Procedure. (Doc. 211.) A review of the transcript of that proceeding reveals that Judge Sessions conducted the complete colloquy required by Rule 11. As part of that inquiry, Judge Sessions ascertained that Parker had read and reviewed the plea agreement with his attorney; that Parker was satisfied with the

---

[2] As discussed in greater detail below, the assumption that the North Carolina drug felony conviction triggered an enhanced statutory mandatory minimum sentence was at least arguably erroneous. Ultimately, Parker faced a five-year mandatory minimum for offenders who engage in a conspiracy involving the distribution of 28 grams or more of cocaine base with no prior "felony drug offense" conviction.

representation Attorney McArthur had provided; and that McArthur had reviewed with Parker the nature of the charges to which he was pleading guilty, the elements of those offenses, and any defenses Parker might assert. (*Id*. at 6.) Judge Sessions also elicited from Parker that he understood that by his plea he faced a mandatory minimum term of imprisonment of ten years pursuant to 21 U.S.C. § 841(b)(1)(B) because of the allegation of a prior drug felony conviction. (*Id*. at 7.)[3] Judge Sessions ascertained that there was a factual basis for the plea and accepted Parker's pleas of guilty, finding that his pleas were entered into voluntarily, having independent basis in fact. (*Id*. at 17–18.) The Court thereupon ordered the preparation of a presentence report (PSR).

### III. The PSR

The United States Probation Office prepared a PSR and submitted it to the Court prior to sentencing. The PSR employed the 2012 Sentencing Guidelines Manual (PSR ¶ 48),[4] and concluded that with respect to the Sentencing Guidelines, Parker faced a sentencing range with respect to imprisonment of 360–486 months, based on a total offense level of 38 and a criminal history category of VI (*id*. at ¶ 121).[5]

---

[3] Again, as discussed below, the prior North Carolina conviction arguably did not trigger the ten-year mandatory minimum under § 841(b)(1)(B).

[4] All citations to the Sentencing Guidelines herein are accordingly to the 2012 version.

[5] An offense level of 38 and a criminal history category of VI ordinarily results in a guidelines imprisonment range of 360 months to life. However, the drug conspiracy count carries a maximum term of 40 years, and the assault count carries a maximum term of six months, resulting in a guideline imprisonment range of 360 to 486 months under USSG § 5G1.2. (*See* PSR ¶¶ 120–121.)

The total offense level of 38 was calculated in the following manner. The base offense level was determined by the amount of drugs involved in the conspiracy.[6] The PSR accepted the stipulation between the parties that the conspiracy involved the distribution of 196 grams of cocaine base, giving rise to a base offense level of 30 under USSG § 2D1.1. (PSR ¶ 50.) The PSR described this drug quantity as "a conservative estimate." (*Id.*)

The PSR also concluded that three enhancements applied. First, two levels were added pursuant to USSG § 2D1.1(b)(2) because Parker used violence when he resisted arrest and assaulted Detective Daniel Merchand in the post office when Merchand attempted to take Parker into custody on February 2, 2012. (*Id.*) Alternatively this specific offense characteristic was determined to be applicable because Parker had used violence against his former girlfriend and coconspirator, Cindy Charbonneau, when he beat her on two occasions. (*Id.*) According to the PSR, Charbonneau had testified that on one of the occasions where Parker beat her, she was pregnant with Parker's child and the assault caused a miscarriage. (*Id.* ¶ 43.)

Second, the PSR also accorded a six-level "official victim" increase in the offense level calculation pursuant to USSG § 3A1.2(c)(1) concluding that Parker had created a substantial risk of bodily injury knowing or having reasonable cause to believe that Detective Merchand was a law enforcement officer. Third, Parker was accorded a three-

---

[6] There was no guidelines calculation for the assault count because it was at the time a Class B misdemeanor (with a maximum term of imprisonment of six months) not subject to the Guidelines. (*Id.* ¶ 49.) As a result of legislation enacted after the time of Parker's conduct, assaults under 18 U.S.C. § 113(a)(4) are now punishable by imprisonment for up to one year. Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, § 906(a), 127 Stat. 54. That recent legislation does not impact this case.

level increase for having played a leadership role in the offense behavior pursuant to USSG § 3B1.1(b).

Regarding obstruction of justice, the PSR indicated that "[t]he probation officer has no information indicating the defendant impeded or obstructed the administration of justice," (PSR ¶ 46), and thus included no enhancement for obstruction of justice (*id.* ¶ 53). Finally, Parker's offense level was reduced by three levels for his manifestation of an acceptance of responsibility under USSG § 3E1.1. (*Id.* ¶¶ 56–57.) With regard to Parker's criminal history computation, the PSR determined that Parker sustained 15 criminal history points, yielding a criminal history category of VI. (*Id.* ¶ 82.)

With regard to the statutory sentencing scheme, the PSR rejected the assumption that Parker faced a mandatory minimum term of imprisonment of ten years because of his prior conviction set forth in the § 851 information. (PSR ¶¶ 3, 69; *id.* at 32.) According to the PSR, Parker's prior drug conviction in North Carolina was a "Class H felony" under that state's law, but did not qualify as a prior "felony drug offense" that would trigger the ten-year mandatory minimum penalty found in § 841(b)(1)(B) because the authorized penalty for the offense under North Carolina law was only 10 to 12 months. (*See id.* ¶ 69.)[7] The government did not contest that conclusion. As a result, Parker faced only a five-year mandatory minimum term of imprisonment for offenders whose conduct involved the distribution of 28 grams or more of cocaine base who had not sustained a prior "felony drug offense" conviction.

---

[7] In support of that conclusion, the PSR cited *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc).

**IV.    Sentencing**

Prior to sentencing, Attorney McArthur filed a sentencing memorandum which incorporated both a motion for a downward departure from the sentencing guideline range and an argument that the Court impose a non-guideline sentence under 18 U.S.C. § 3553(a).  McArthur did not challenge the PSR's guideline calculation, but sought a downward departure under USSG § 5H1.3 (specific offender characteristic—"Mental and Emotional Conditions").  (Doc. 195 at 2.)  Accordingly, McArthur argued that a 60-month term was appropriate on the grounds that Parker "suffers from a significant mental and emotional condition."  (*Id.*)  McArthur did not, however, argue for a downward departure under USSG § 5K2.13 based on diminished capacity.

McArthur acknowledged that while Parker's offense conduct was serious, Parker's serious mental health impairments substantially contributed to the commission of the offenses.  His untreated impairments caused Parker to be paranoid, delusional, impulsive, and aggressive, according to McArthur.  McArthur argued that if properly treated, Parker could and would abide his conduct by the norms of society.  (*Id.* at 2–8.)  To support these contentions, McArthur submitted Dr. Drukteinis's April 13, 2012 report.  (Doc. 195-1.)

The United States filed a sentencing memorandum concurring with the PSR's guidelines calculation in all respects except for its failure to accord the obstruction-of-justice enhancement.  (Doc. 194 at 5.)  According to the government, it learned of "obstructive conduct" after the PSR process.  (*Id.* at 5 n.2.)  Specifically, the government indicated that it had learned that Parker had written affidavits falsely claiming that his

coconspirators, Reginald Daggs and Haywood Mack, were innocent and had no involvement in the conspiracy. (*Id.* at 4–6; *see also* Doc. 194-1.)

The government contended that a sentence consistent with the guideline range was warranted; noting the seriousness of Parker's offense conduct, his extensive criminal history, Parker's assault of both Merchand and Charbonneau, and Parker's obstructing justice. (Doc. 194 at 6.) Regarding Parker's assault on Charbonneau, the government asserted that "he beat her so badly that she miscarried" and that she took out a restraining order against him. (*Id.* at 3.)

Parker appeared in the District Court for sentencing on March 18, 2013. Judge Sessions ascertained that Parker had read and reviewed the PSR with his attorney and that there were no factual mistakes contained within the PSR. (Doc. 210 at 2–3.) Judge Sessions noted the existence of one guideline application issue, being the government's efforts to seek a two-level enhancement for obstruction of justice. The Court heard the government's argument on the application of the enhancement. In response, Attorney McArthur acknowledged that Parker had attempted to create false exculpatory evidence for Daggs and Mack. McArthur explained that Parker had written those letters at the request of Daggs and Mack, and that the letters revealed the degree of control Daggs and Mack exercised over Parker, as well as the extent of Parker's mental health impairments. (*Id.* at 5–6.) On that basis McArthur stated the defense opposed the obstruction-of-justice enhancement.

The Court then received argument from Attorney McArthur concerning the mental health impairments described by Dr. Drukteinis. Judge Sessions expressed a concern that

the connection between the conspiracy offense conduct and Parker's impairments was tenuous. (*Id.* at 6.) Judge Sessions also engaged McArthur on Parker's role in the conspiracy, noting that Parker had developed a significant distribution network. (*Id.* at 8–9.) McArthur conceded that Parker had a relationship with a "network" in Vermont, but asserted that "there were people out there who were telling him what to do." (*Id.* at 9.)

When given an opportunity to address the Court, Parker manifested an acceptance of responsibility. He apologized to Detective Merchand, acknowledged the seriousness of his criminal conduct offense, and admitted that his effort to exonerate his coconspirators was misguided. (*See id.* at 9–12.) When asked who was in charge of the conspiracy, Parker asserted that Mack was "the main person in charge." (*Id.* at 11.)

The government's position as to Parker's role in the conspiracy was that each of the coconspirators were friends involved in distributing drugs, and that there was no evidence that Mack gave orders to Parker. (*Id.* at 13.) The government also asserted that Parker's role was the most egregious, arguing that Parker exercised a "significant amount of control over local addicts." (*Id.* at 14.) The government further argued that Parker should receive a guideline or otherwise significant sentence because, among other things, Parker used violence. (*Id.* at 15.) According to the government, Parker on one occasion had assaulted Charbonneau to the point that she suffered a miscarriage. (*Id.*)

Attorney McArthur argued that his client had behaved well when his impairments were treated and that he had been a "model inmate." (*Id.* at 19.) McArthur acknowledged that Parker's conduct was very serious, but argued that multiple mitigating factors, including Parker's mental health disorders, warranted a five-year sentence. (*Id.*)

Judge Sessions thereupon engaged in a sentencing guideline calculation which was consistent with the conclusions set forth in the PSR. On the disputed issue of the obstruction-of-justice enhancement, the Court stated:

> The defendant was incarcerated, approached theoretically by two other individuals to submit a false affidavit. He submitted a false affidavit. That was obviously intended to obstruct justice. If in fact it had been followed by the Court, it would have obstructed justice, and it seems to me a two-level increase should be applied. It is somewhat irrelevant, in light of the fact that it doesn't increase the offense—the guideline penalty, but the two-level increase should be assessed.

(Doc. 210 at 20:23–21:7.) Thus, Parker faced a sentencing guideline range of 360–486 months.

Judge Sessions however granted Attorney McArthur's motion for a non-guideline sentence. Judge Sessions remarked that Parker's mental illness "contributed to a lot of the enhancements that are being applied in this particular case." (Doc. 210 at 21:16–18.) The judge noted that the conspiracy, while extensive, was a "street-level" operation which was not sophisticated. (*Id.* at 22.) The judge further observed that a review of Parker's extensive criminal history revealed that Parker had several countable convictions for which Parker has served little or no jail time. Finally the judge expressed a concern that the official-victim enhancement, the use-of-violence enhancement, and the assault conviction overrepresented the seriousness of Parker's conduct. As a result the Court granted the request for a non-guideline sentence and imposed a sentence of 150 months in prison on Count 1 and a concurrent six-month sentence on Count 3, to be followed by a four-year term of supervised release. (Doc. 210 at 28.) Following sentencing, a notice of

appeal was filed on behalf of Parker.  (Doc. 201.)  That notice of appeal was later withdrawn.  (*See* Doc. 223.)

## V.     The Section 2255 Motion

Parker asserts numerous grounds in support of his contention that he received ineffective assistance of counsel prior to his plea and at sentencing.  Parker claims that Attorney McArthur failed to: (1) "object to the prosecutor's pervasive misconduct"; (2) "properly argue [Parker's] mental health issues"; (3) "properly argue against the obstruction of justice enhancement"; and (4) "properly argue against the two-level enhancement for violence on double counting grounds."  (Doc. 268-1.)  Parker also asserts that his attorney failed to: (5) "properly argue against the six-level enhancement for official victim"; (6) "argue against the four-level leadership enhancement"; and (7) "argue that *any* disparity between powder and crack cocaine is racially discriminatory in nature." (*Id.*)[8]  Finally, Parker contends that McArthur failed to provide effective assistance by failing "to raise the aforementioned issues on direct appeal."  (Doc. 268-1.)

In compliance with this Court's order (Doc. 280), Attorney McArthur filed an affidavit responding to Parker's § 2255 Motion.  (Doc. 292.)  I refer to McArthur's response as necessary in the analysis below.  The government filed its opposition to Parker's § 2255 Motion on January 30, 2015.  (Doc. 295.)[9]

---

[8]  Parker also initially claimed that Attorney McArthur "failed to challenge [Parker's] criminal history category," (*id.*), but in his Memorandum in support of his § 2255 Motion he states that he abandons that claim (Doc. 276 at 34–35).

[9]  The Court granted Parker until March 30, 2015 to file a Reply.  (Doc. 305.)  As of this writing no Reply has been filed.

## ANALYSIS AND CONCLUSIONS OF LAW

## I.     Standards Governing Ineffective-Assistance-of-Counsel Claims

Parker has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages of the proceedings, including the entry of a plea and sentencing. *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). In order to succeed on his ineffective-assistance-of-counsel claim, Parker must meet the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Id.* To satisfy the first prong, Parker must show that Attorney McArthur's performance "'fell below an objective standard of reasonableness in light of prevailing professional norms.'" *Jackson v. Conway*, 763 F.3d 115, 152 (2d Cir. 2014) (quoting *Cornell v. Kirkpatrick*, 665 F.3d 369, 375 (2d Cir. 2011)). Counsel's performance need not be perfect; "attorneys are deficient only if they fall below a standard of 'reasonably effective assistance.'" *Whitley v. Ercole*, 965 F. Supp. 2d 344, 351 (S.D.N.Y. 2013) (quoting *Strickland*, 466 U.S. at 687); *see also Kohler v. Kelly*, 890 F. Supp. 207, 214 (W.D.N.Y. 1994) ("[T]he right to meaningful representation does not include the right to a flawless performance.").

"Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). In assessing the attorney's performance, a court "must apply a 'heavy

measure of deference to counsel's judgments,'" *id*. (quoting *Strickland*, 466 U.S. at 691),

and recognize a "strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance," *Palacios v. Burge*, 589 F.3d 556, 561 (2d Cir. 2009)

(internal quotation marks omitted). "A lawyer's decision not to pursue a defense does

not constitute deficient performance if, as is typically the case, the lawyer has a

reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir.

1996), and "'strategic choices made after thorough investigation of law and facts relevant

to plausible options are virtually unchallengeable,'" *id.* at 588 (quoting *Strickland*, 466

U.S. at 690).

To satisfy the second prong, Parker "'must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.'" *Jackson*, 763 F.3d at 153 (quoting *Strickland*, 466 U.S. at

694). "A reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Strickland*, 466 U.S. at 694. "In the context of plea negotiations, a defendant

can make this showing by producing both a sworn affidavit or testimony stating that he

would have accepted or rejected a plea agreement but for his counsel's deficient

performance and also some additional 'objective evidence' supporting his claim." *United

States v. Frederick*, 526 F. App'x 91, 93 (2d Cir. 2013) (quoting *United States v. Gordon*,

156 F.3d 376, 381 (2d Cir. 1998) (per curiam)). Regarding Parker's claim that he

received ineffective assistance in sentencing, he must show "a reasonable probability

that, but for counsel's substandard performance, he would have received a less severe

sentence." *Gonzalez*, 722 F.3d at 130.

"The [ineffective-assistance-of-counsel] claim must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011). I apply the *Strickland* standard to each of Parker's ineffective-assistance claims in turn.

## II.     Failure to Assert Prosecutorial Misconduct

Parker contends that McArthur was ineffective in failing to object to what Parker insists was pervasive prosecutorial misconduct. Parker articulates two separate instances of alleged misconduct. First, according to Parker, AUSA Nolan engaged in misconduct by filing a § 851 information "knowing that it was not legally applicable." (Doc. 276 at 6.) Second, Parker contends that, without any reliable evidence, AUSA Nolan represented to the Court that Parker had assaulted Charbonneau and caused a miscarriage. (*Id.*)

### A.     Section 851 Information

According to Parker, AUSA Nolan committed misconduct because "compelling circumstantial evidence" establishes that AUSA *knew* that the North Carolina conviction did not qualify as a "felony drug offense" for the purposes of the ten-year minimum in 21 U.S.C. § 841(b)(1)(B), but filed the § 851 information anyway. (Doc. 276 at 11.) Namely, Parker insists that AUSA Nolan must have been aware of *United States v. Simmons*, in which the Fourth Circuit held that the defendant's prior conviction in North Carolina for marijuana possession—a "Class I felony" under that state's Structured Sentencing Act "for which he faced no possibility of imprisonment"—did not constitute a

prior "felony drug offense" conviction under § 841(b)(1)(B). *United States v. Simmons*, 649 F.3d 237, 239–40 (4th Cir. 2011) (en banc).[10]  Parker also points out that AUSA Nolan's § 851 information conspicuously omitted the *length* of the "term of imprisonment" to which he was sentenced in the North Carolina case.  (*See* Doc. 93.)

AUSA Nolan asserts that when she filed the § 851 information she was under the mistaken impression that the North Carolina conviction was a qualifying "felony drug offense."  (Doc. 295 at 12–13.)  Attorney McArthur says that he shared that impression, and that he and AUSA Nolan were both mistaken.  (Doc. 292 at 3–4.)

I conclude that McArthur's failure to raise a prosecutorial-misconduct claim arising out of AUSA Nolan's filing of the § 851 information was not deficient because such a claim was meritless.  *See Quail v. Farrell*, 550 F. Supp. 2d 470, 476 (S.D.N.Y. 2008) (counsel's failure to preserve meritless prosecutorial-misconduct claim was not ineffective assistance).  Prosecutorial misconduct is by definition "more than mere trial error." *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998).  Here, Parker's claimed "circumstantial evidence" that AUSA Nolan knew there was no basis for filing a § 851 information is entirely unpersuasive; there is no evidence of any conduct on AUSA Nolan's part that rose above the level of mere error.

---

[10]  Five of the 13 judges in *Simmons* dissented, asserting that that the word "punishable" in § 802(44) is an offense-based rather than a defendant-based analysis, and that as a result Congress intended for the courts to "look to the maximum authorized punishment for any defendant convicted of the offense," regardless of whether the particular defendant is subject to or is actually punished by imprisonment for more than a year.  *Simmons*, 649 F.3d at 258 (Agee, J., dissenting).  It is unnecessary here to take a position on that issue since, as noted above, the government ultimately did not contest the PSR's conclusion that Parker's prior drug conviction in North Carolina did not qualify as a prior "felony drug offense."

Moreover, the apparent failure to spot the § 802(44) issue until after Parker's guilty plea (either by the Court, by the government in not filing the § 851 information, or by Attorney McArthur in not claiming prosecutorial misconduct or otherwise challenging the § 851 information) did not cause Parker any prejudice.  Parker asserts in an affidavit that "[w]ere it not for the improperly filed § 851 Information, I would not have pleaded guilty in this case."  (Doc. 276-1 at 1, ¶ 2.)  However, a defendant's assertions alone are insufficient to establish prejudice; some "objective evidence" is necessary.  *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003).  Where a petitioner claims that he would have gone to trial rather than plead guilty, he can show prejudice by providing:

> some basis for concluding that the chance of acquittal or conviction of lesser charges was sufficiently high that the petitioner would have rationally chosen to take the risk of conviction and a longer sentence that accompanies a trial rather than accept the certainty of conviction and a generally lesser sentence that is entailed by a guilty plea.

*Cuevas v. United States*, Nos. 10 Civ. 5959(PAE)(GWG), 98 Cr. 1053(PAE), 2012 WL 3525425, at *9 (S.D.N.Y. Aug. 16, 2012), *adopted*, 2013 WL 655082 (S.D.N.Y. Feb. 22, 2013).

Here, Parker's post hoc assertion that he would not have pleaded guilty if the government had not filed the § 851 information is difficult to square with the fact that, after the government concluded that it would not object to the PSR's suggestion that § 841(b)(1)(B)'s ten-year mandatory minimum did not apply, Parker did not seek to withdraw his plea.  (*See* Doc. 292 at 5, ¶ 6.)  Moreover, Parker articulates no basis for concluding that the chance of acquittal was such that he would have rationally chosen to take the risk of going to trial.  His arguments are focused on what he asserts was a

"gross[] overcalculat[ion]" of his sentencing range. (Doc. 276 at 9.) Parker does offhandedly suggest that the conspiracy-wide drug-quantity stipulation was exaggerated, and that he was not liable for the drug weight attributable to the entire conspiracy. (*Id.* at 13–14.) Neither of those arguments is persuasive. As Attorney McArthur explains, the government's investigation of Parker's activities was "lengthy and thorough," and the evidence against his client was "overwhelming" (Doc. 292 at 2, ¶ 5).

Finally, Parker contends that there was an independent Rule 11 error insofar as his plea was rendered involuntary by the allegedly erroneous § 851 information. (Doc. 276 at 12.) Parker argues that his plea could not possibly have been knowing, intelligent, and voluntary if it was based on the misunderstanding that he faced a ten-year mandatory minimum. (*See id.*) This argument is procedurally barred. As the Supreme Court has explained: "[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998). Here, Parker did not attack the voluntariness or intelligence of his plea on direct review.

Of course, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Id.* (citations omitted). Here, Parker does not allege that he is actually innocent. He does argue, however, that McArthur was ineffective for not arguing on appeal any of the arguments that Parker raises in his § 2255 Motion. Parker cannot show prejudice, however, because an appeal attacking the voluntariness of the plea would have failed.

There was no basis for arguing that Parker's plea was involuntary. A plea is involuntary if it is "'the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.'" *United States v. Roque*, 421 F.3d 118, 122 (2d Cir. 2005) (quoting *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988)). There was no evidence of any of those conditions.

There was also no basis for arguing that Parker's plea was not knowing or intelligent. It is true that "ignorance of existing rights may void a plea agreement." *Id.* Here, the parties to the plea agreement were arguably mutually mistaken about whether Parker's mandatory minimum sentence was five or ten years. Moreover, conditions changed after that bargain was struck: namely, the government agreed that the mandatory minimum was five years. However, if the government had reached that conclusion earlier, it is unlikely that the parties would have bargained differently or reached a different bargain. Indeed, as Attorney McArthur points out, Parker "never stated either expressly or implicitly that he would like to withdraw his plea or that he would not have pled guilty if he had known the 851 was invalid." (Doc. 292 at 5, ¶ 6.)

Even if the parties would have bargained differently or reached a different bargain, that is "simply not relevant" to whether Parker's plea is enforceable. *Roque*, 421 F.3d at 123. Parker understood the consequences of his bargain. The fact that the government later agreed that Parker was entitled to a more favorable bargain does not render Parker's plea involuntary.

## B.    Charbonneau Assault

Parker alleges that Attorney McArthur was ineffective for failing to object to what Parker asserts was AUSA Nolan's misconduct in representing to the Court at sentencing that Parker had assaulted his then-girlfriend Cindy Charbonneau and that one such assault had caused her to miscarry.  (Doc. 276 at 15.)  According to Parker, the government's representation was based solely on Charbonneau's uncorroborated grand jury testimony. (*Id.*)  Parker maintains that there was no documentary evidence to show that Charbonneau was ever assaulted, that she was pregnant, or that she miscarried as the result of any assault.  (*Id.*)  He also notes that Charbonneau's grand jury testimony was not subjected to cross-examination.

The government maintains that it had a good faith belief in Charbonneau's claim, both because of Charbonneau's testimony and because of a restraining order she obtained.  (Doc. 295 at 13.)  Thus, according to the government, there was no misconduct to which McArthur could have objected.  (*Id.* at 13–14.)  Similarly, Attorney McArthur states that he found independent evidence supporting Charbonneau's allegations of assault—namely, her affidavit seeking a temporary relief from abuse order (*see* Doc. 292-2)—and concluded that there was no good faith basis to challenge Charbonneau's credibility regarding Parker's assaultive behavior.  (Doc. 292 at 6, ¶ 6.)

Here, as indicated above, the PSR noted that Charbonneau had testified before the grand jury that on one of the occasions where Parker beat her, she was pregnant with Parker's child and the assault caused a miscarriage.  (PSR ¶ 43.)  Parker had opportunities to object to the PSR, including at the sentencing hearing, but he reported

that he did not see any factual mistakes. (*See* Doc. 210 at 2–3.) Moreover, the

government was entitled to rely on Charbonneau's grand jury testimony and a § 2255

motion is not a vehicle to reargue witness credibility. *Conteh v. United States*, 226 F.

Supp. 2d 514, 519 (S.D.N.Y. 2002). The government was not required to obtain

corroboration or documentary evidence in order to rely in good faith on grand jury

testimony in the sentencing process. And the rules of evidence do not apply at grand jury

proceedings or at sentencing, Fed. R. Evid. 1101(d)(2), (3), nor does due process require

cross-examination at sentencing, *Williams v. New York*, 337 U.S. 241, 250–51 (1949).

The government's reference to Parker's assault on Charbonneau was not misconduct, and

there was no basis for McArthur to argue otherwise.

Regarding prejudice, Parker contends that "to the extent that the Court relied upon

the prosecutor's utterly unreliable account, Parker was prejudiced by the misconduct."

(Doc. 276 at 16.) The government maintains that Parker was not prejudiced because the

Court "did not appear to rely to a significant degree on the abuse of Charbonneau in

crafting [Parker's] sentence; and, in any event, a prosecutorial misconduct objection

would have lacked merit." (Doc. 295 at 14.) Judge Sessions did find that Parker's

assaults on Detective Merchand and on Charbonneau made Parker's conduct "particularly

serious." (Doc. 210 at 23:13.) However, it does not seem likely that the outcome would

have been any different if the Court had not considered Parker's assault on Charbonneau;

Parker's conduct still involved violence against Detective Merchand. More importantly,

for the reasons discussed above, there would have been no merit to a prosecutorial

misconduct objection arising out of the government's reference at sentencing to Parker's assaults on Charbonneau.

## III. Alleged Failure to Argue Mental Health Issues

According to Parker, Attorney McArthur's performance with respect to Parker's mental health issues was deficient in three respects. First, Parker asserts that McArthur "should not have withdrawn his motion for a comprehensive forensic psychiatric evaluation in favor of an extremely abbreviated independent evaluation." (Doc. 276 at 18.) Second, Parker argues that "once the indictment had been superseded, adding the conspiracy charge and significantly enlarging the time frame of the offense, counsel should have immediately moved the Court for a second, this time *comprehensive*, forensic psychiatric evaluation." (*Id.*) Third, Parker maintains that Dr. Drukteinis's report was insufficient for McArthur to conclude that Parker's mental health disorder did not establish diminished capacity with respect to the drug conspiracy offense. (*Id.* at 16–19.) The government maintains that Attorney McArthur properly argued Parker's mental health challenges "as the centerpiece of his sentencing advocacy" and properly addressed the issue of Parker's competency to stand trial. (Doc. 295 at 14–16.)

Parker's first two alleged deficiencies are apparently both assertions that Attorney McArthur should have pursued additional psychiatric evaluation to determine whether Parker was competent to stand trial. On that issue, however, Parker has failed to rebut the strong presumption that McArthur's performance was adequate. Attorney McArthur was not required to press for additional psychiatric evaluation as long as he had no reason to believe that his client was incompetent. *See Langford v. Day*, 110 F.3d 1380, 1387

(9th Cir. 1996) (counsel's decision not to further explore issue of competence was reasonable because there was "no reason to believe that further psychiatric evaluation would have created an issue regarding [the defendant's] mental competence"); *Coleman v. Rick*, 281 F. Supp. 2d 549, 558 (E.D.N.Y. 2003) (where counsel had no reason to believe that petitioner was incompetent, counsel was not ineffective in allowing petitioner to plead guilty).

Here, the record discloses no reason for Attorney McArthur to believe that Parker was incompetent, and thus no reason to pursue additional psychiatric evaluation. As McArthur explained at the February 16, 2012 arraignment, he understood that as long as Parker was taking his medication, Parker would be competent. Dr. Drukteinis's April 13, 2012 report confirmed that. (*See* Doc. 292-3 at 4 ("Mr. Parker is a very different individual now that he has been without substances for a couple of months and on antipsychotic medication. . . . [W]ith his mental illness under adequate treatment, and without the effect of substances, he is competent to stand trial and/or enter a plea in his own behalf.").) Moreover, McArthur himself asserts that, after his initial meeting with Parker on February 3, 2012, McArthur met with Parker several times in person and he "never again had a concern regarding Mr. Parker's mental competency." (Doc. 292 at 7, ¶ 7.)

For similar reasons, Parker cannot show any prejudice. Indeed McArthur's affidavit is strong evidence that Parker was in fact competent throughout the proceedings. *See United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986) ("[S]ince incompetency involves an inability to assist in the preparation of a defense or rationally to comprehend

the nature of the proceedings, failure by trial counsel to indicate the presence of such difficulties provides substantial evidence of the defendant's competence.").

Parker also argues that Dr. Drukteinis's report was insufficient for McArthur to conclude that Parker's mental health disorder did not establish diminished capacity with respect to the drug conspiracy offense. According to Parker, a "careful reading" of Dr. Drukteinis's report shows that Dr. Drukteinis concluded that Parker was not suffering from diminished capacity with regard to the *assault* offense, but reached no such conclusion with regard to the *drug conspiracy* offense. (*See* Doc. 276 at 17.) According to Parker, McArthur should have filed a motion for downward departure pursuant to USSG § 5K2.13 based on diminished capacity. (Doc. 276 at 6.) The government maintains that Dr. Drukteinis's conclusion applies with equal force to the totality of Parker's conduct. (Doc. 295 at 15 n.5.)

In his affidavit, Attorney McArthur notes that he followed up with Dr. Drukteinis after reading Dr. Drukteinis's April 13, 2012 report. (Doc. 292 at 6, ¶ 7.) Dr. Drukteinis responded in writing on May 1, 2012 indicating, among other things, that he had "no reason to believe that Mr. Parker's mental state, the absence of psychiatric medication, and the Cocaine and Cannabis Dependence would have resulted in not understanding that the alleged distribution of controlled substances was criminal or in not understanding what he was doing." (Doc. 292-4 at 2–3.) In light of that opinion from Dr. Drukteinis, Attorney McArthur states that he "did not believe I had a good faith basis to argue diminished capacity." (Doc. 292 at 7, ¶ 7.)

Parker has not shown that McArthur rendered deficient performance by not seeking a downward departure under USSG § 5K2.13 based on diminished capacity. Parker offers no basis for concluding that Dr. Drukteinis's determinations in his April 13, 2012 report do not apply to all of the conduct with which Parker was charged. Any doubt on the issue was erased with Dr. Drukteinis's May 1, 2012 follow-up response.

For similar reasons, Parker cannot show any prejudice on this issue: a request for a downward departure under USSG § 5K2.13 based on diminished capacity would have been denied. Parker asserts in his affidavit that "[w]ere it not for counsel's failure to properly argue my mental health issues, I would not have pleaded guilty." (Doc. 276-1 at 1.) Here again, however, Parker has presented no objective evidence to support that claim. Just as a diminished-capacity argument would not have prevailed at sentencing, it is also no basis for concluding that there was a sufficiently high probability of acquittal or conviction on lesser charges.

## IV.    Alleged Failure to Argue Against Enhancements

Parker attacks Attorney McArthur's performance with respect to each of the four guideline enhancements that were applied. As noted above, McArthur did not challenge the PSR's guideline calculation. Parker's specific challenges to each enhancement are discussed below. Parker recognizes that he received a non-guidelines sentence, but asserts that each of the alleged failures regarding the enhancements prejudiced him by shifting the "starting point" of the Court's sentencing analysis. (*See* Doc. 276 at 23.)

The government and Attorney McArthur both maintain that McArthur reasonably determined that he lacked a good faith basis to object to any of the four enhancements. (Doc. 292 at 7, ¶ 8; Doc. 295 at 16.) McArthur and the government also both assert that McArthur made a strategic determination not to challenge the enhancements because doing so might have weakened Parker's argument that he accepted responsibility. (Doc. 292 at 7, ¶ 8; Doc. 295 at 16.) Finally, the government contends that Parker cannot show prejudice because the Court's sentencing determination was based entirely on the 18 U.S.C. § 3553(a) analysis. (*Id.* at 17.)

Here, Attorney McArthur made a strategic decision not to challenge the enhancements because doing so could have weakened Parker's argument that he accepted responsibility. That strategic decision is virtually unchallengeable. As discussed below, none of Parker's arguments suggest that attacking the enhancements would have been worth risking the acceptance-of-responsibility reduction under USSG § 3E1.1. Moreover, for that reason and the reasons discussed below, there is no basis for Parker's claim that McArthur unreasonably failed to request a *Fatico* hearing on any of the enhancements.[11]

### A.    Obstruction-of-Justice Enhancement (USSG § 3C1.1)

Parker argues that McArthur failed to argue that Parker lacked the necessary intent to warrant the obstruction-of-justice enhancement. (Doc. 276 at 20.) As Parker correctly notes, an obstruction-of-justice enhancement under USSG § 3C1.1 is not appropriate

---

[11] Named after *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979), a *Fatico* hearing is an evidentiary hearing used to resolve disputed issues related to sentencing. *See* USSG § 6A1.3 & Commentary.

unless the "'defendant had the specific intent to obstruct justice, *i.e.*, . . . the defendant consciously acted with the purpose of obstructing justice.'" *United States v. Reed*, 49 F.3d 895, 900 (2d Cir. 1995) (quoting *United States v. Defeo*, 36 F.3d 272, 276 (2d Cir. 1994)).  According to Parker, his mental health condition negated the ability to willfully obstruct justice, and McArthur should have made that argument instead of arguing that Daggs and Mack exerted influence over Parker.  (*See* Doc. 276 at 21–22.)

McArthur's performance on this issue was not deficient because there was no basis for McArthur to argue that Parker lacked the ability to willfully obstruct justice. McArthur had reviewed Dr. Drukteinis's report, which indicated that there was an "insufficient basis to conclude that [Parker] lacked adequate capacity to appreciate the criminality of his conduct, or adequate capacity to conform his conduct to the requirements of the law." (Doc. 292-3 at 4.)  McArthur did argue that Parker's mental health disorder "overshadow[ed]" all of the circumstances of Parker's case (Doc. 210 at 6), but there was no basis to argue that Parker lacked capacity to form the requisite intent.

Parker's assertions to the contrary are unpersuasive.  His comment to the Court at sentencing that he thought he was "doing something good" by writing the affidavits (Doc. 210 at 10:5–6) was an acknowledgment that doing so was misguided, but was not sufficient to prove that he lacked capacity.  The Court's comment that Parker's mental health issues contributed to the enhancements (Doc. 210 at 21:16–18) was not a finding that Parker's mental health issues actually negated any of the enhancements.

Parker also cannot show any prejudice arising from McArthur's alleged failure to properly argue against the obstruction-of-justice enhancement.  At the time of sentencing,

there was no dispute about any of the other enhancements, and Judge Sessions observed that it was somewhat irrelevant whether the obstruction-of-justice enhancement applied since by itself it did not alter the guideline penalty.  (Doc. 210 at 21.)[12]  Now, of course, Parker challenges all of the enhancements.  However, for the reasons discussed below, none of those challenges are meritorious, and thus inclusion of the obstruction-of-justice enhancement, even if it was error, was not prejudicial.

## B.    Violence Enhancement (USSG § 2D1.1(b)(2))

Parker argues that McArthur should have challenged the violence enhancement on the grounds that applying the enhancement together with the assault charge constituted impermissible double-counting.  (Doc. 276 at 23.)  This argument is meritless.  As the Second Circuit has explained, "'Impermissible double counting occurs when one part of the [G]uidelines is applied to increase a defendant's sentence to reflect the kind of harm that has already been fully accounted for by another part of the [G]uidelines.'"  *United States v. Watkins*, 667 F.3d 254, 261 (2d Cir. 2012) (alterations in original) (quoting *United States v. Volpe*, 224 F.3d 72, 76 (2d Cir. 2000)).

Here, aside from the violence enhancement, no part of the guidelines calculation set forth in the PSR or adopted by the Court accounted for Parker's assault.  As the PSR made clear, the Guidelines do not apply to the Class B misdemeanor assault.  (PSR ¶ 49.) Parker's suggestion that the Court applied USSG § 2A2.3 ("Minor Assault") is

---

[12]  Holding all other factors steady, the two additional levels under USSG 3C1.1 would have increased Parker's total offense level from 38 to 40.  In either case, with Parker's criminal history category of VI, the guidelines sentencing range—taking into account the statutory maximums and USSG § 5G1.2—would have been 360–486 months.

unfounded; that provision is not mentioned anywhere in the PSR or in the Court's

guidelines calculation at sentencing.  There was no basis to challenge the violence

enhancement on double-counting grounds, and thus McArthur's failure to raise such a

challenge was neither deficient nor prejudicial.

### C.    Official-Victim Enhancement (USSG § 3A1.2(c))

Parker contends that McArthur should have challenged the official-victim

enhancement on the basis of lack of intent.  (Doc. 276 at 25.)  Similar to his argument

with respect to the obstruction-of-justice enhancement, Parker argues that he lacked the

mental capacity to form the necessary intent for the official-victim enhancement.  (*Id.*)

For the reasons discussed above, however, there was no basis for McArthur to make that

argument, and Parker's arguments to the contrary are unpersuasive.  His remark at

sentencing that he was "totally out of [his] mind" at the time he assaulted Detective

Merchand (Doc. 210 at 10:14) was not a sufficient basis to challenge Dr. Drukteinis's

professional conclusions that Parker possessed capacity and that there was no evidence

that Parker was acutely psychotic at that time.  Again, the Court's comment that Parker's

mental health issues contributed to the enhancements was not a finding that Parker's

mental health issues actually negated any of the enhancements.

Parker also argues that McArthur should have challenged the official-victim

enhancement because the offense was not tantamount to aggravated assault.  (Doc. 276 at

25.)  Parker notes that Application Note 4 to USSG § 3A1.2 indicates that subsection

(c)—the subsection that was applied in his case—"applies in circumstances tantamount to

aggravated assault."  USSG § 3A1.2 cmt. n.4.  Pointing out that he was charged only with

"minor" assault under 18 U.S.C. § 113(a)(4), Parker asserts that McArthur should have argued that the assault did not come within USSG § 3A1.2(c) because it was not tantamount to aggravated assault. (Doc. 276 at 26.)

The commentary that Parker cites reinforces what is clear from the text of USSG § 3A1.2(c): to come within that subsection, the assault must create "a substantial risk of serious bodily injury." As relevant here, "serious bodily injury" is defined as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." USSG § 1B1.1 cmt. n.1(L). Notably, "'serious bodily injury' need not actually have occurred, so long as the defendant's conduct created a 'substantial risk' of such injury." *United States v. Ashley*, 141 F.3d 63, 68 (2d Cir. 1998). That is what Application Note 4 means when it refers to circumstances "tantamount" to aggravated assault; as the note goes on to say, the assault must be "sufficiently serious to create at least a 'substantial risk of serious bodily injury.'" USSG § 3A1.2 cmt. n.4.

Here, the PSR revealed that Parker's assault on Detective Merchand included several punches to the head, and as a result of the assault, Merchand was treated for injuries at the emergency room, and was later diagnosed with a concussion. (PSR ¶ 30.) The assault on Detective Merchand clearly involved a substantial risk of serious bodily injury. *See Ashley*, 141 F.3d at 69 (defendant's assault on officers did not actually cause serious bodily injury, but such an injury was a "significant possibility" where assault lasted several minutes and officers subsequently required medical attention). The

punches to Detective Merchand's head—which were forceful enough to cause a concussion and send him to the emergency room—could have easily resulted in injuries requiring surgery, hospitalization, or rehabilitation. In that sense the assault was "tantamount" to aggravated assault. Accordingly, there was no basis to challenge the official-victim enhancement, and thus McArthur's failure to raise such a challenge was neither deficient nor prejudicial.

### D.    Leadership Enhancement (USSG § 3B1.1(b))

Finally, Parker maintains that McArthur failed to challenge the leadership enhancement by arguing that there were fewer than five participants or by arguing that Parker did not manage or supervise any other participants. (Doc. 276 at 27.) Neither argument is persuasive. It is true that in order for § 3B1.1(b) to apply, the criminal activity must have involved "five or more participants" or must have been "otherwise extensive." Parker concedes that six people were charged with conspiracy to distribute cocaine base, but asserts that two of them—Joseph Brown and Patrick Lepore—were "simply customers" of the partnership between Parker, Mack, Daggs, and Hill. (Doc. 276 at 29.) It is also true that § 3B1.1(b) only applies where the defendant was a "manager or supervisor" in the offense. Parker asserts that he was "simply a small-time crack dealer who 'controlled' the local addicts only to the extent that he fueled their addiction." (Doc. 276 at 30.)

No evidence supports Parker's contentions. The PSR recounted testimony that Brown "worked with Parker to distribute drugs in the Burlington area" and that he was not only Parker's "main customer" but also his "drug runner." (PSR ¶¶ 41–42.) Brown

was also involved in "cooking" the cocaine for Parker. (*Id.* ¶ 26.) Similarly, the PSR indicated that Lepore sold crack and powder cocaine for Parker frequently over a course of months, sold to customers that Parker sent to him, and also sold heroin for Parker. (*See id.* ¶ 16.) This was no mere buyer-seller relationship of the type discussed in *United States v. Parker*, 554 F.3d 230 (2009). As the Court found at sentencing, Parker controlled addicts—often forcibly—and used them to distribute the drugs. (Doc. 210 at 22.)

That is entirely consistent with Parker's role as a "manager or supervisor," and with the Court's subsequent statement that Parker was one of four "partners" who had come to Vermont to distribute drugs. (*Id.* at 22–23.) The Court's statement did not preclude the fact that other individuals joined in a conspiracy with those partners once they arrived in Vermont. The Court did remark that this was "not really a situation in which this person is in control of others." (Doc. 210 at 23:2–3) But that statement does not contradict the determination that Parker was a "manager or supervisor." The Court in that remark was stating that Parker was not in control of the other three "partners"; it is not in conflict with the conclusion that Parker, as one of the "partners," controlled the lower-level addicts and coconspirators. For these reasons, there was no basis to challenge the leadership enhancement, and McArthur's failure to raise such a challenge was neither deficient nor prejudicial.

## V. Base Offense Level: Powder vs. Crack Cocaine

In addition to arguing that McArthur failed to challenge the guidelines enhancements, Parker also argues that McArthur failed to challenge the guidelines base

offense level.  Some additional background is necessary on this issue.  Parker, who is

African-American, stipulated in the September 17, 2012 plea agreement that the

conspiracy involved the distribution of 196 grams of cocaine base (crack cocaine).  Under

the relevant guidelines prescription, USSG § 2D1.1(c)(5), the base offense level for

trafficking that quantity of cocaine base is level 30.  Base offense level 30 was in fact the

level calculated by the PSR (PSR ¶ 50) and by the Court (Doc. 210 at 27:10–11).

Under the Guidelines, a drug trafficker dealing 196 grams of crack cocaine

receives the same base offense level (level 30) as a trafficker dealing 3.5 kilograms of

powder cocaine (about 18 times more powder cocaine by quantity than crack cocaine).  A

number of challenges to the current federal drug sentencing scheme have been raised in

which it has been asserted that the 18-to-1 disparity is inappropriate, including arguments

based on how the disparity of the ratio impacts African American offenders.  Under

current law—as well as the law at the time Parker was sentenced—a court with a policy

disagreement with the disparity appearing in the Guidelines could permissibly depart

below the Guidelines for that reason.  *See Spears v. United States*, 555 U.S. 261, 264

(2009) (per curiam).[13]  If the Court had used a 1-to-1 ratio, Parker points out that his base

offense level would have been 12 levels lower.

---

[13]  Some judges have since announced categorically that they will use a 1-to-1 ratio for all crack
cocaine sentencings.  *E.g.*, *United States v. Whigham*, 754 F. Supp. 2d 239, 246 (D. Mass 2010).  The
Chief Judge of this Court has very recently remarked at a sentencing in a drug conspiracy case that "in the
absence of something that would tell me that 18-to-1 reflects some facts that should be encapsulated in
sentencing, I don't see a reason to continue to adhere to it.  I think it produces unfairness."  Sentencing at
11:58, *United States v. Simmonds*, No. 5:13-cr-42 (D. Vt. Feb. 25, 2015) (Reiss, C.J.).

Parker insists that Attorney McArthur was ineffective for failing to argue for a departure based on the 18-to-1 disparity. McArthur states that he did not argue that the 18-to-1 disparity is racially discriminatory as part of his strategy because he believed the argument "would not be effective in mitigating the potential sentence faced by Mr. Parker." (Doc. 292 at 8, ¶ 9.) The government maintains that McArthur was not ineffective because there is no merit in an argument that a disparity between powder and crack cocaine is unconstitutional. (*See* Doc. 295 at 17–18.)

Here, as with McArthur's decision not to challenge the enhancements, his decision not to argue that the 18-to-1 disparity is racially discriminatory was strategic. McArthur's strategic decision to focus on Parker's mental health issues as a basis for a non-guidelines sentence was neither unreasonable nor prejudicial. Parker in fact received a very substantial departure to a sentence of 150 months. Speculation about how the Court might have responded to an argument based on the 18-to-1 disparity is insufficient to undermine the strong presumption that McArthur rendered adequate assistance. Even assuming that McArthur had argued for a 1-to-1 ratio and that the Court had adopted it, judging the impact on what Parker's ultimate sentence might have been is an exercise in pure speculation. *See United States v. Allen*, No. 5:12-cr-115, 2014 WL 6872697, at *10 (D. Vt. Dec. 4, 2014) (citing cases).

And even indulging in that speculation, the 150-month sentence Parker ultimately received was well within the range that probably would have resulted. Assuming a 1-to-1 ratio, Parker's base offense level would have been level 18 under USSG § 2D1.1(11). The Court would have applied the enhancements discussed above: +2 for use of violence,

+6 for official victim, +3 for leadership, and +2 for obstruction of justice. Finally, the Court would have subtracted 3 levels for acceptance of responsibility, arriving at total offense level of 28. Combined with a criminal history category of VI, the resulting imprisonment range is 140–175 months. None of the mitigating factors discussed in the Court's analysis under 18 U.S.C. § 3553(a) would have been likely to result in an even lower sentence.

## VI. Appeal

Parker argues that McArthur was ineffective for not raising on appeal any of the issues discussed above. (Doc. 276 at 35.) Attorney McArthur states that, based on his research and analysis, Parker did not have a good-faith basis to appeal any of the issues. (Doc. 292 at 8, ¶ 10.) McArthur says he explained to Parker the basis for that conclusion, and, based on McArthur's advice, Parker withdrew his notice of appeal. (*Id.* at 8–9, ¶ 10.) The government asserts that "Parker should not be heard to complain about his own decision, made with the advice of counsel." (Doc. 295 at 18.) For all of the reasons above, none of the alleged errors that Parker now raises would have supplied a good-faith basis for appeal. McArthur was not ineffective for advising Parker to withdraw the appeal.

## VII. No Hearing is Required

In ruling on a § 2255 motion, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Pham v. United States*, 317 F.3d 178, 185 (2d Cir. 2003) (section 2255 does not permit summary dismissals of

motions that present facially valid claims). To warrant a hearing, the defendant's motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief. *See Machibroda v. United States*, 368 U.S. 487, 494 (1962); *United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987). Parker has failed to show specific facts that if proved at a hearing would warrant the granting of his Motion. Accordingly, no hearing is required.

## CONCLUSION

For the reasons set forth above, I recommend that Parker's § 2255 Motion (Doc. 268) be DENIED.

Dated at Burlington, in the District of Vermont, this 8th day of April, 2015.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).